Hinsdale-Doyle Granite Co. v. Armstrong.

## Hinsdale–Doyle Granite Company
### v.
### John M. Armstrong.

PRACTICE—EXCLUDING EVIDENCE FROM JURY.—Where there is no proof to support the plaintiff's cause of action, or where there is one essential allegation of a declaration which has no proof tending to support it, the court may properly instruct the jury to find for the defendant; but where there is evidence tending to support the plaintiff's case in all its parts, it is improper to instruct the jury to disregard it and find for the defendant.

APPEAL from the Circuit Court of Cook county; the Hon.

JOHN G. ROGERS, Judge, presiding. Opinion filed May 25, 1880.

This was an action of assumpsit brought by appellee, John M. Armstrong, against appellant, The Hinsdale-Doyle Granite Co., to recover for, commission and salary claimed by appellee to be due to him for services in soliciting and securing granite contracts for appellant under two written agreements between appellant and appellee. The declaration contained the common counts only, to which were attached copies of the two agreements. The defendant pleaded the general issue with a notice of special matter, which latter was subsequently withdrawn, leaving the defense to stand upon the general issue alone.

On the 8th day of May, 1876, appellant entered into a written agreement with appellee in and by which the latter agreed for the term of two years to seek customers and solicit for the sale of the company's cut granite, for monumental, building and other purposes, for which he was to receive as compensation for his services, fourteen per cent. commission on all contracts for building work, solicited and put under contract through his personal efforts, not exceeding in gross amount $220,000, and for all amounts in excess thereof, seven per cent. For monumental work solicited and secured by him, he was to receive ten per cent., one-third upon the signing of the contract for the same, and the balance upon the completion of the work and payment therefor. On building contracts and other work, he was to receive one-third of his commission upon the signing of the contracts therefor, the balance to be paid out of the three first payments or estimates received on the contract, provided the amount of commissions did not exceed one-fourth of the gross amount received on the three estimates. Armstrong was to pay all expenses, personal or otherwise, in the prosecution of the business from the commissions.

The agreement provided that it might be canceled by either party giving to the other thirty days' notice of such cancellation. Armstrong stipulated not to negotiate or offer for sale the stone of any other company or firm during the continuance of the agreement.

On the 25th day of June, 1877, the parties made a second agreement, also in writing, by which Armstrong agreed to enter the employ of the Granite Company for the term of three and a half years, in the capacity of solicitor and salesman, at a stipulated salary of five thousand dollars a year, payable in semi-annual installments of twenty-five hundred dollars each, with the right on the part of the company to cancel the agreement after the expiration of one year, if the profits derived from the sales should not justify the payment of the salary.

At the time of the making of these agreements, the county was about to engage in the erection of county buildings. The contract for the cut stone work was let by the county to McNeil & Son, August 24th, 1876. By the terms of the contract all the cut-stone work was to be of limestone, the county reserving, however, the right to make changes in the material to to be used for parts of the building. Appellant desired to introduce its granite into the building in the place of limestone for the pilasters, columns and entrances, and appellee exerted himself with the architect of the county building and also with the individual members of the county board to that end. On the 6th day of November, 1876, a contract was concluded between the county and appellant for constructing the pilasters and columns of granite, and $28,000 was deducted from the McNeil contract by reason thereof. On the 4th day of June, 1877, a further contract was entered into between the county and appellant for constructing the entrances of granite. The contract price for the granite columns and pilasters was $139,-824, which was all paid to appellant. The price for the entrances was, $139,970, which has also been paid to the company, except the sum of $29,000, the steps not being yet completed.

Appellee has received on the commission $4,000, which he paid out to one Keogh to assist him in procuring the substitution of granite in the place of limestone, and also the further sum of $1,150 on the same contract, and it is not claimed he has received anything more on either agreement.

It appears from the evidence that the granite company gave notice of the cancellation of the commission agreement December 22d, 1876.

On the conclusion of the plaintiff's evidence, the court, on motion of the defendant, struck out and excluded from the consideration of the jury all the testimony put in by the plaintiff relating to the contract dated May 8th, 1876, known as "commission contract," and the plaintiff excepted. The defendant thereupon offered testimony in reference to the services of appellee under the salary agreement of June 25th, 1877, and after testimony in rebuttal by appellee, the jury rendered a verdict in favor of appellee for $2,500, for which sum he had judgment. Appellant brings the case to this court for review, and assigns various errors. Appellee assigns cross-errors, calling in question the ruling of the court in excluding from the jury the agreement of May 8th, 1876, and the evidence introduced thereunder.

Mr. JOHN M. ROUNTREE, for appellant; that the contracts were procured by corrupt means, and appellee cannot recover commissions therefor, cited Marshall v. B. & O. R. R. Co. 16 How. 344; Mills v. Mills, 4 N. Y. 543; Frost v. Belmont, 6 Allen, 152; Tool Co. v. Norris, 2 Wall, 45; Cook v. Shipman, 51 Ill. 316; Cooley's Con. Lim. 136.

Mr. JAMES FELCH, for appellee; against the admission of parol testimony to vary a written contract, cited Hair v. La-Brawse, 10 Ala. 548; Bogers v. Atkinson, 1 Kelly, 12; Edgerly v. Emerson, 3 Foster, 555; King v. Calding, 1 McMullan, 133; Carter v. McNeiley, 1 Ired. 448; Glendale Woolen Co. v. Protection Ins. Co. 21 Conn. 19; Wiles v. Harshaw, 8 Ired. Eq. 308; Lovering v. Adams, 22 Vt. 160; Knight v. English Worsted Co. 2 Cush. 271; Gray v. Hook, 4 Conn. 449; Troy Iron Co. v. Corning, 1 Blatch. 467; Niles v. Culver, 8 Barb. 147; Abrams v. Pomeroy, 13 Ill. 133; McAvoy v. Long, 13 Ill. 147; Culver v. Hamilton, 11 Barb. 147; Lyon v. Bond, 13 Ga. 192; Griswold v. Scott, 13 Ga. 210; Norton v. Woodruff, 2 Comst. 153; Rogers v. Calt, 1 N. J. 704; Lawber v. LeRoy, 2 Sandf. 202.

The law will not construe a contract so as to make it illegal, if capable of a different construction: Crittenden v. French, 21 Ill. 600.

Hinsdale-Doyle Granite Co. v. Armstrong.

A subsequent illegal transaction will not make a prior legal contract invalid: Howell v. Fountain, 3 Kelly 176.

Unless the parties are *in pari delicto* the court will afford relief to the more innocent: Schevmerhane v. Talman, 4 Kern. 93; Tracy v. Talmage, 4 Kern. 162; Baeher v. Wolf, 59 Ill. 470; Quick v. Thomas, 6 Mich. 111; Bibb v. Miller, 11 Bush, 306; Curtis v. Levett, 15 N. Y. 9.

Appellants cannot reap the benefits of appellee's services and escape payment therefor: Doe v. Roberts, 2 B. & Ald. 367; Juda v. Trustees, etc., 16 Ind. 56; Stillman v. Mitchell, 2 Rob. 523; Winnpny v. French, 18 Ohio St. 469; Phillips v. Phillips, 1 E. & L. 339.

The court will not presume that corrupt means were employed: Howard v. Coffin, 47 Barb. 653.

WILSON, J.  Neither the grounds of the motion to strike out the evidence relating to the commission agreement, nor the reasons of the court sustaining the motion, appear in the record, but it is stated in the brief of appellant's counsel that the reasons assigned were, that it did not sufficiently appear that the contracts which plaintiff claimed he had been instrumental in procuring, had been procured through plaintiff's personal efforts; and that the services rendered by the plaintiff, and the means used by him in endeavoring to procure the granite contracts were immoral and against public policy.  Upon whichever ground the ruling was based, we are of the opinion that the court erred in withdrawing the evidence from the consideration of the jury.

The agreement, upon its face, was fair and legal, and was a contract which, both in respect to its terms and its subject-matter, it was competent for the parties to make.  It was not an agreement relating to any particular building or specific work, but was general in its terms.  It provided that appellee was to act as agent of appellant for the period of two years in seeking customers and soliciting the sale of its granite for monumental, building, and other purposes.  Appellant was a company located in the city of New York, engaged in the granite trade, and desired to introduce its goods into other places.

This it could only do through its agents. Appellee had been an architect in Chicago for some years, and was familiar with the city and its building enterprises. It was natural, therefore, that appellant should have selected him as a person who would be likely to make an efficient representative of the company. We see nothing in the agreement itself, nor in the selection by the company of its agent, to necessarily cast suspicion upon its validity or fairness.

The more important questions in the case are, first, whether the services of appellee were of such a nature as to prevent him from recovering the stipulated commission, or other compensation therefor; and secondly, whether there was such a want of proof of appellee's instrumentality in procuring for appellant the granite contract, as to justify the action of the court in withdrawing that part of the plaintiff's case from the jury.

Considering these questions in the inverse order stated, it seems to us manifest that if the court withdrew from the jury the plaintiff's evidence of services rendered under the commission contract, on the ground that it was insufficient to show that he had been instrumental in procuring the granite contract, it was an invasion by the court of the province of the jury, for, whatever may be said as to the nature of the means used by him, the testimony shows undeniably that he was actively engaged for a considerable period of time in efforts to procure the substitution of granite in lieu of limestone for the pilasters and columns. To what extent his efforts may have been instrumental in procuring the granite contract, it is not necessary for us to determine; that was a question of fact for the jury to pass upon, and which the plaintiff had the right to have submitted to them. It was not the case of an entire want of proof, but was one in which there was testimony directly tending to show that the plaintiff had rendered services under the commission agreement which may have been the means of securing the contract for appellant. We are, therefore, of the opinion that it was error to withdraw the evidence from the jury on the ground of its insufficiency.

But the principal ground relied on to sustain the action of the court is that the evidence disclosed the use of means and

Hinsdale-Doyle Granite Co. v. Armstrong.

influences by appellee in his efforts to procure the substitution of granite in place of limestone, which were corrupt and immoral, and for which no recovery can be had.    As the case will have to be submitted to another jury, we shall refrain from discussing the evidence in detail, or expressing an opinion as to its effect as a whole.

The testimony tended to show that for a considerable period of time appellee was actively engaged in efforts to procure the substitution of granite for the pilasters and columns in place of limestone; that he had repeated interviews with Egan, the architect of the county buildings, with whom he had formerly been in partnership, and explained to him wherein it would be a benefit to the building to have a more substantial and durable stone, that would not scratch and be liable to be marked; that the granite could be put in long lengths, and would beautify the building, while the Lemont limestone, of which the building was to be constructed under the McNeil contract, could not be got in lengths of more than three and a half feet, and would turn yellow, etc.; and that he urged Egan to recommend to the County Board the adoption of granite; that Egan, becoming satisfied that the change was desirable, promised to recommend it if the city would also consent to the use of granite in the city building; that appellee went to see Mr. Tilley, the architect for the city building, several times, and had him meet Egan, who finally agreed to recommend granite; that objections to the change were raised by the commissioners on account of the existing contract with McNeil & Son; that to remove that objection appellee went to see McNeil many times and urged him to consent to the substitution of the granite on account of its benefiting as well as beautifying the building; that he also labored with Walker, who was interested in the McNeil contract, and that they finally consented to the change; that appellee also recommended the substitution of granite to members of the county board.    Egan testifies that he frequently saw appellee in the committee room; and there is also testimony from Tilley and others, tending to show that he engaged actively in efforts to bring about the change from limestone to granite.    The proof shows that granite was

finally adopted; that bids therefor were invited by the County Board, and the contract for the columns and pilasters was let to appellant at $139,970, for which it has been been paid in full. Appellee testifies that appellant has paid him on account of the commission contract $5,150, of which he gave $4,000 to one Keogh to assist him in procuring the adoption of granite in place of limestone.

On the other hand, there was evidence tending to show that appellee resorted to the use of improper means to influence the action of individual members of the County Board, such as drinking with them, and in one or two instances treating them to suppers, personally importuning them, etc. Appellee testified that he never paid the commissioners any money, but on the contrary when urged by Hinsdale, the president of the Granite Company, to do so, refused; and in his explanation of his treating them to suppers, he says: "I invited them into Burke's on one or two occasions; probably it was just about the time when men usually eat supper, and I asked them to go in and take supper with me."

It is claimed by the counsel for appellant that the evidence on the part of plaintiff was sufficient to show that both of the written agreements between the parties were made to improperly influence public officers and the employes and servants of the public in the discharge of their duties, and that all that was done thereunder was tainted with corruption, and cannot, therefore, be made the basis of a legal cause of action.

It is sufficient to say that the determination of the question of corruption involved the determination of the facts, upon which the change was predicated, and the jury was the chosen and appropriate tribunal to which the determination of the facts, had been submitted by the parties. If undue influences were relied upon as a defense, the burden was upon appellant to prove it. There was a conflict of evidence in relation to the nature and extent of the means used by appellee in his efforts to procure favorable action by the county commissioners, which should have been referred to the decision of the jury. Under the practice as now settled in this State, the rule may be stated thus: Where there is no proof to support the plaintiff's cause

of action, or where there is one essential allegation of a declaration which has no proof tending to support it, the court may properly instruct the jury to find for the defendant; but where there is evidence tending to support the plaintiff's case in all its parts, it is improper to instruct the jury to disregard it and find for the defendant. See the following cases: Poleman v. Johnson, 84 Ill. 269; Martin v. Chambers, Ibid. 579; Phillips v. Dickerson, 85 Ill. 11; Guerdon v. Corbett, 87 Ill. 272; Pemberton v. Williams, Ibid. 15. Also, Caveny v. Weiller, 90 Ill. 158; in which the court said: "This mode of instructing a jury to which an issue has been submitted, is subject to criticism, and in most cases would work a reversal."

And in Hubner v. Feige, the court uses the following language: "We cannot approve of this mode of instructing a jury. Such form of instruction is always objectionable. Under our law the jury are the judges of the evidence. It is an invasion of the rights of the jury and an usurpation of their functions for the court to determine for them what facts are proven, or attempt to tell them what their verdict should be on a question of fact.  *  *  The court may inform the jury what facts will sustain the issue, but may not determine whether such facts have been established."

The withdrawal of the appellee's evidence in relation to the commission's contracts was equivalent to instructing the jury to find for the defendant as to that part of the plaintiff's demand, and was erroneous. For that error the judgment of the court below is reversed and the cause remanded.